UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
VINCENT WARREN,                          :     05 Civ. 9590 (RJH)
:
                 Plaintiff,   :
:     **MEMORANDUM**
     - against -                     :     **OPINION AND ORDER**
:
GLENN GOORD, et al.,                     :
:
                Defendants.   :
:
------------------------------------------------------------x

      Plaintiff Vincent Warren, appearing pro se, brings suit under 42 U.S.C. § 1983 against defendants Glenn Goord, Commissioner of the New York State Department of Correctional Services ("DOCS"); William Phillips, Superintendent of Green Haven Correctional Facility; Thomas Eagen, Director of the Inmate Grievance Program for DOCS; and John Doe,[1] Deputy Superintendent of Security at Green Haven Correctional Facility. Defendants have moved for dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Court grants the motion to dismiss in part and denies it in part.

### BACKGROUND

      Plaintiff is an inmate housed at Green Haven Correctional Facility. At approximately 9:00 PM on January 1, 2004, an unidentified assailant slashed the left side of plaintiff's face. (Compl. ¶¶ 12–13.) At the time of the attack, plaintiff alleges that he was watching television in the E/F yard; immediately after the attack, plaintiff began to "swing at a group of people" who

---

[1] Although the complaint refers to this person as "John Doa," it does so in the sense that this is an individual whom plaintiff cannot identify at this time. (Compl. ¶ 5.) As such, this Court will treat "John Doa" as "John Doe" for the purposes of this opinion.

were seated behind him watching television.  (*Id.* ¶¶ 14–15.)  After this incident, plaintiff was handcuffed and taken to the Green Haven clinic, where he received a total of twelve stitches to his left cheek.  (*Id.* ¶¶ 16–17.)  Based on the failure of the prison to install metal detectors at the entrance to the E/Fyard, plaintiff filed a grievance requesting monetary damages for the "lack of proper security measures" that allegedly resulted in the assault.  (*Id.* ¶¶ 11, 19.)  Plaintiff also requested that the facility begin using metal detectors before inmates are permitted to enter the yard.  (*Id.* ¶ 20.)  Ultimately, the grievance was denied, and plaintiff's appeal to the Central Office Review Committee was also denied.  (*Id.* ¶¶ 21–23.)

In his complaint, plaintiff alleges that defendant Goord created a policy under which serious assaults on inmates occurred in prison yards and that he was grossly negligent in supervising subordinates who failed to protect prisoners from "deadly inmates."  (*Id.* ¶¶ 24–26.)  Plaintiff alleges that defendant Phillips exhibited deliberate indifference by failing to install metal detectors despite his knowledge that inmates were being slashed and stabbed; to support this argument, plaintiff alleges that an inmate was killed in mid-2003 and that Phillips is aware that weapons are sometimes buried in the yard.  (*Id.* ¶¶ 27–28, 34–35.)  Plaintiff's only allegation against defendant Eagen is that he denied plaintiff's grievance concerning the attack.  (*Id.* ¶ 23.)  Plaintiff seeks $1,000,000 in damages for his injury as well as laser surgery to remove the scar on his face.  (*Id.* ¶ 37.)  Plaintiff also seeks an injunction requiring maximum security state prisons to install metal detectors at the entrance to prison yards.  (*Id.* ¶ 38.)  On October 12, 2006, defendants filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

## STANDARD OF REVIEW

A motion to dismiss may be granted only when "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).  In ruling on such a motion, this Court is required to accept "the material facts alleged in the complaint as true." *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir. 1991) (citing *Cooper v. Pate*, 378 U.S. 546 (1964) (per curiam)).  "The issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976) (per curiam)).  The Court must be especially cautious against improper dismissal when the complaint is pro se or when it alleges civil rights violations.  *Easton*, 947 F.2d at 1015 (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)); *see also Hernandez*, 18 F.3d at 136.  The Court is required to construe the pro se complaint "'liberally, applying less stringent standards than when a plaintiff is represented by counsel.'" *Branham v. Meachum*, 77 F.3d 626, 628–29 (2d Cir. 1996) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)).

## DISCUSSION

Plaintiff asserts in his complaint that defendants violated his Eighth Amendment rights. (*See* Compl. ¶ 32 ("It was cruel and unusual punishment to place plaintiff in a fish tank full of sharks, basically, a yard full of violent inmates with weapons.").)  More specifically, plaintiff argues that the defendants' failure to install metal detectors at the entrance to the prison yard constitutes an Eighth Amendment violation because the failure demonstrates a deliberate indifference to plaintiff's safety.

3

**1.      The Claim Against Phillips and Goord**

While not mandating "comfortable prisons," the Eighth Amendment does require prison officials to provide humane conditions of confinement, including the duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The Amendment also imposes a duty on prison officials to "'take reasonable measures to guarantee the safety of the inmates.'"  *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).  Despite this general requirement to protect inmates, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.   To state a cognizable failure to protect claim under § 1983, the inmate must demonstrate that two conditions are met.  First, for a claim "based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).  Second, the inmate must show that prison officials acted with "deliberate indifference" to the safety of the inmate.  *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Morales v. New York City Dep't of Corrections*, 842 F.2d 27, 30 (2d Cir. 1988).  The test for deliberate indifference is twofold:  To act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837; *see also Hayes*, 84 F.3d at 620 ("[A] prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." (citing *Farmer*, 511 U.S. at 847)). With these standards in mind, the Court will now examine plaintiff's failure to protect claim.

### a. *Substantial Risk of Serious Harm*

The Court finds that plaintiff has satisfied the first prong of the inquiry. In the complaint, plaintiff alleged that he was the victim of a violent attack by other inmates that resulted in a wound requiring twelve stitches across his left cheek. (Compl. ¶¶ 13–17.) This attack, especially when considered in light of plaintiff's allegations of a recent murder and other attacks on inmates, sufficiently pleads that plaintiff was put at substantial risk of serious harm. *See, e.g., Zimmerman v. Macomber*, No. 95 Civ. 0882 (DAB), 2001 U.S. Dist. LEXIS 12499, 2001 WL 946383, at *4 (S.D.N.Y. Aug. 21, 2001) (finding that inmate who had been repeatedly stabbed by another inmate met substantial risk requirement); *King v. Dep't of Correction*, No. 95 Civ. 3057 (JGK), 1998 U.S. Dist. LEXIS 1825, 1998 WL 67669, at *5 (S.D.N.Y. Feb. 18, 1998) (finding that attack by another inmate, resulting in cut to inmate's face, neck, and shoulder requiring twelve stitches, met this standard); *Knowles v. New York City Dep't of Corrections*, 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (finding that violent slashing attack by another inmate, which resulted in deep cut to face requiring sixty stitches, satisfied substantial risk requirement).

### b. *Deliberate Indifference*

Defendants argue that plaintiff does not satisfy the deliberate indifference prong because he "fail[ed] to show particularized knowledge by the defendants that there was a risk to plaintiff." (Pl.'s Mot. to Dismiss 8.) However, the Supreme Court held in *Farmer v. Brennan* that an inmate could demonstrate deliberate indifference not only by showing that prison officials failed to respond to a particularized threat to the complaining plaintiff, but also "by showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk." 511 U.S. at

5

842 (internal quotation marks omitted); *see also, e.g., Matthews v. Armitage*, 36 F. Supp. 2d 121, 125 (N.D.N.Y. 1999) (describing plaintiff's burden under deliberate indifference prong as showing that "the particular plaintiff entered within the zone of that risk as known to the defendants"); *Murchison v. Keane*, No. 94 Civ. 466 (CSH), 1996 U.S. Dist. LEXIS 9096, 1996 WL 363086, at *6 (S.D.N.Y. July 1, 1996) (noting that while plaintiff did not allege that defendants were aware of personal risk to his safety, under *Farmer*, "deliberate indifference does not preclude a scheme that attributes constructive knowledge of an obvious risk to prison officials").

Plaintiff alleges that the defendants exhibited deliberate indifference by failing to take action despite their knowledge that violent acts were occurring in the prison yard. (Compl. ¶¶ 30–31.) Specifically, plaintiff contends: (a) that defendants Phillips and Goord were aware that assaults and stabbings regularly took place in the prison yards (Compl. ¶¶ 25, 27), that weapons were stored in the yards (Compl. ¶ 34), and that in mid-2003, an inmate had been killed in the A/B yard (Compl. ¶ 28.); and (b) that the use of metal detectors would prevent such attacks from taking place (Compl. ¶ 33). Given the liberal standard afforded pro se plaintiffs in § 1983 actions, this Court finds these allegations sufficient to state a claim for deliberate indifference and withstand a motion to dismiss.

Assuming that plaintiff's allegations are true, the defendants' alleged tolerance for weapons in the yard and resulting inmate attacks may rise to the level of disregarding a substantial and pervasive risk of violence. *See Liles v. Camden County Dep't of Corr.*, 225 F. Supp. 2d 450, 463 (D.N.J. 2002) (denying a motion for summary judgment where plaintiffs' alleged that prison officials were deliberately indifferent to serious risk of physical harm by fighting caused by inadequate toileting conditions); *see also Hazelwood v. Monroe*, No. 95 Civ.

6

3648 (DC), 1996 U.S. Dist. LEXIS 7935, 1996 WL 312355, at *2 (S.D.N.Y. June 11, 1996) (explaining that the allegation of "official tolerance of contraband weapons in the housing area" could be used to demonstrate deliberate indifference based on knowledge of substantial safety risk); *Brown v. Chambers*, No. 92 Civ. 7622 (LAP), 1995 U.S. Dist. LEXIS 5169, 1995 WL 234681, at *5 & n.2 (S.D.N.Y. Apr. 20, 1995) (noting that although plaintiff had not shown "widespread tolerance of contraband weapons," it "may very well state a claim of deliberate indifference"). The plaintiffs in *Liles* claimed that multiple fights broke out after urine splashed on prisoners who slept on the floor of their cells, close to the toilets. 225 F. Supp. 2d at 461–62. Because the prison did nothing to remedy the problem, the court found that the plaintiffs stated a claim that was sufficient to survive a motion for summary judgment. *Id.* at 462. In the present case, the plaintiff's allegations are similar: prison officials failed to take reasonable remedial action to avoid the harm at issue. The plaintiff specifically alleges that weapons were regularly stored and had been used in the prison yard and that he suffered injuries because the prison did not provide metal detectors at the entrance to the yard to detect and prevent the use of weapons. (Compl. ¶¶ 13–17, 29, 33.) Plaintiff should be allowed to present evidence as to: the level of violence occurring in the prison yards, the extent to which each prison official was actually aware of a high level and serious risk of violence in the yards, and whether the use of metal detectors would have had a salutary effect.

     Defendants rely on several cases in arguing that a deliberate indifference claim cannot rely on a theory of dangerous prison conditions. In *Melo v. Combes*, a district court explained in dismissing a failure to protect claim that the inmate could not rely on allegations that prison officials knew of "issues of prison safety in the most general sense." No. 97 Civ. 0204 (JGK), 1998 U.S. Dist. LEXIS 1793, 1998 WL 67667, at *5 (S.D.N.Y. Feb. 18, 1998). However, the

7

Court in *Melo* also noted that awareness of a "specific dangerous condition on defendant's cell block" would satisfy the deliberate indifference prong. *Id.* Plaintiff in this case is not relying on general dangerousness in prison; instead, plaintiff is arguing, based on *Farmer*, that the defendants knew of a specific hazardous condition—the presence of contraband weapons in the prison yard—and did nothing to stop the resulting violence. Thus, the claim and allegations are far more specific than those in *Melo*, which were based only on the fact that there had been attacks on inmates involving weapons throughout the prison and that prison searches had in the past revealed contraband weapons. *Id.* Rather than focusing on the general danger of the prison, plaintiff argues that the existence of weapons in the prison yard constituted a specific risk that lead to his being wounded. (Compl. ¶¶ 13–17, 29, 33.) Because the defendants were allegedly aware of this risk and did nothing to prevent it, plaintiff's complaint cannot be dismissed at this stage.

Defendants also rely on *Coronado v. Goord*, in which a plaintiff based a failure to protect claim on the failure of prison officials to install metal detectors to prevent inmate violence in the prison yard. No. 99 Civ. 1674 (RWS), 2000 U.S. Dist. LEXIS 13876, 2000 WL 1372834, at *6 (S.D.N.Y. Sept. 25, 2000). The court in *Coronado* found the deliberate indifference prong was not met because plaintiff had not made specific allegations as to the level and type of previous violence in the yard and whether it was serious and similar enough to put defendants on notice of the substantial risk of danger. *Id.* Despite the apparent similarity between the two cases, the defects in Coronado's complaint are not found in plaintiff's complaint, and thus a different outcome is warranted at the motion to dismiss stage.[2] Plaintiff alleges that the slashing attack on him was similar to the numerous and serious prior attacks in the yard, in which "inmates were

---

[2] Indeed, the fact that a former lawsuit was filed against Commissioner Goord and the former Green Haven Superintendent concerning the dangers of the exercise yard might itself be evidence that the defendants were aware of such dangers.

8

being slashed in their faces and stabbed in their bodies and necks as well as hearts."  (Compl. ¶ 27.)  The complaint also alleges that defendants were aware of the slashing attacks and failed to take remedial steps such as installing metal detectors.  (*Id.* ¶¶ 29, 33.)  Unlike in *Coronado* where the court found the complaint to be "missing several links in [the] logical chain," the Court finds that the complaint properly alleges prior similar attacks supporting a claim of defendants' actual knowledge and remedial measures that would have prevented plaintiff's injuries.  Therefore, plaintiff's failure to protect claim against Goord and Phillips survives this motion to dismiss.

## 2. The Claim Against Eagan

Defendants argue that the complaint against defendant Eagen should be dismissed because Eagen lacks personal involvement.  (Mem. of Law 8–9.)  "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  In the complaint, plaintiff alleges only that Eagen denied his grievance.  (Compl. ¶ 23.)  However, plaintiff does not explain how a denial of a grievance violates plaintiff's constitutional or federal rights so as to state a claim under § 1983.  Because plaintiff has failed to allege any relevant facts that would give rise to a failure to protect claim, and because he has not alleged that Eagen violated any of his other rights, the Court dismisses the claim against Eagen.[3]  *See Abbas v. Senkowski*, No. 03 Civ. 476, 2005 U.S. Dist. LEXIS 32398, 2005 WL 2179426, at *2 (N.D.N.Y. Sept. 9, 2005) (finding that Eagen's alleged failure to respond to grievance was "insufficient to establish personal involvement" in violation of prisoner's federal rights).

---

[3] It appears that plaintiff may agree that Eagen was not personally involved in the attack upon him.  In plaintiff's reply to the motion to dismiss, he states:  "For the foregoing reasons, the plaintiff respectfully request [sic] that their motion to dismiss be denied, the claim against Eagen should be dismissed."  (Pl. Reply 6.)

### 3. The Claim Against John Doe

At present, plaintiff is unable to identify the Superintendent of Security at Green Haven Correctional Facility. This fact, however, is not necessarily fatal to his claim against John Doe. While a plaintiff generally cannot bring a claim against an unidentified person, the rule is not applied strictly against pro se plaintiffs, especially when incarcerated, at this stage in a litigation; instead, "it is proper for a section 1983 plaintiff to use a 'Doe' pleading until such time as her identity can be learned through discovery or through the aid of the trial court." *Cole v. Artuz*, No. 99 Civ. 0977 (RWS), 2000 U.S. Dist. LEXIS 8117, 2000 WL 760749, at *6 (S.D.N.Y. June 12, 2000) (citing Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 11:264 (1989)); *see also Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) (noting the general rule against dismissing claims against prison supervisors "until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability" (citing *Soto v. Brooklyn Correctional Facility*, 80 F.3d 34, 37 (2d Cir.1996))); *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997) ("In a number of cases analogous to that at bar, appellate courts have found error in a trial court's refusal to assist a *pro se* plaintiff in identifying a defendant. This is particularly so where the plaintiff is incarcerated, and is thus unable to carry out a full pre-trial investigation."). Therefore, the Court will not dismiss the claim against John Doe until plaintiff has had sufficient discovery to name the defendant. However, once plaintiff discovers the identity of this superintendent and his alleged role in plaintiff's injuries, he must amend his complaint to specifically state how this person's action or inaction gives rise to a failure to protect claim. If after discovery plaintiff can still not allege any personal involvement, plaintiff's claim will be subject to dismissal.

## CONCLUSION

For the reasons discussed above, the claims against defendant Eagen are dismissed in their entirety. The Court denies the remainder of the defendants' motion to dismiss [10]. Plaintiff is given leave to amend the complaint to properly name the Superintendent of Security at Green Haven and allege personal involvement in plaintiff's injuries if and when he obtains such information through discovery.

SO ORDERED.

Dated: New York, New York
       March 5, 2007

Richard J. Holwell
United States District Judge